IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

YING-JUN CHEN,

    *Plaintiff,*

    v.

MARYLAND DEPARTMENT OF
HEALTH AND MENTAL HYGIENE
ET AL.,

    *Defendants.*

Civil Action No.: ELH-15-01796

## MEMORANDUM OPINION

Ying-Jun Chen, who is self-represented, filed suit against his former employers, the Maryland Health Care Commission ("MHCC") and the Maryland Department of Health and Mental Hygiene ("MDHMH" or "DHMH"), alleging harassment and discrimination based on national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); the Fourteenth Amendment to the United States Constitution; and Article 26 of the Maryland Declaration of Rights. ECF 1. The Complaint also names as defendants the Secretary of MDHMH, Van T. Mitchell; the Acting Director of MHCC, Michael Steffen; and an MHCC administrator, Bridget Zombro (the "individual defendants"). ECF 1.[1] *Id.* Plaintiff appended thirty-one exhibits to his Complaint. ECF 1-2 through ECF 1-33.

MDHMH is a principal department of the Maryland state government. ECF 1 ¶ 5. MHCC is an independent commission that functions within MDHMH. *Id.* ¶ 7. Plaintiff, a

---

[1] Chen sued Steffen and Zombro both individually and in their official capacities. Chen sued Mitchell in his official capacity, but, as discussed, *infra*, it is unclear whether he also sued Mitchell in his individual capacity.

naturalized United States citizen who was born in China (*id.* ¶ 13), worked for MHCC from 2009 until his termination in 2012. ECF 1-33 at 2 (Letter from U.S. Equal Employment Opportunity Commission dated Mar. 31, 2015). He alleges that he suffered "discrimination on national origin (Chinese) and harassment with regard to discharge" (ECF 1 at 1), which I construe as claims for wrongful termination and hostile work environment.[2] Plaintiff also challenges the procedure by which his employer disciplined and ultimately terminated him. *Id.* ¶¶ 83-88. He seeks "rescission of his discharge and restoration to his position of employment with full back pay and to have his suspensions expunged from his record . . . ." *Id.* at 2.

Defendants have moved to dismiss (ECF 6), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), accompanied by a memorandum of law (ECF 6-1) (collectively, the "Motion"). Chen opposes the Motion (ECF 10, "Opposition"), and submitted three exhibits (ECF 10-1 through ECF 10-3) to support his position. Defendants have replied. ECF 11, "Reply."

The Motion has been fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I will grant the Motion, with leave to amend the Title VII claim.

## I. Factual and Procedural Background[3]

As noted, plaintiff was born in China. ECF 1 ¶¶ 4, 13. It appears that Chen immigrated to the United States after earning his undergraduate degree in China. *See* ECF 1-5 at 3, Resume. He maintains that, "[a]s a result of his national origin, he has a noticeable accent." ECF 1 ¶ 13. From December 9, 2009, until Chen's termination on January 18, 2012, Chen worked for MHCC

---

[2] Because plaintiff is self-represented, his submissions must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[3] Given the posture of the case, I shall assume the truth of plaintiff's allegations.

as a "Health Policy Analyst Advanced."   ECF 1-33 at 2.   MHCC is "an independent regulatory agency" within MDHMH "whose mission is to plan for health system needs, promote informed decision-making, increase accountability, and improve access in a rapidly changing health care environment by providing timely and accurate information on availability, cost, and quality of services to policy makers, purchasers, providers and the public."   Welcome to the Maryland Health Care Commission, Department of Health and Mental Hygiene (Feb. 2, 2016), http://mhcc.maryland.gov/.

As a Health Policy Analyst, Chen was responsible for conducting "health services (payments and utilization) analysis and special studies for the Division of Cost and Quality Analysis within [MHCC's] Center for Information Services and Analysis."   ECF 1-2 at 3, Position Description.   Chen maintains that he received satisfactory performance evaluations during March 2010 and June 2010.   ECF 1 ¶¶ 14-15 (citing ECF 1-3; ECF 1-4).   According to Chen, before December 2010, he "had never been subject to any disciplinary action by Defendants, or any of his former employers."   ECF 1 ¶ 16 (citing ECF 1-5).

Plaintiff alleges that on December 2, 2010, "amidst intense work" on a biennial report, "a project supervisor walked by Plaintiff's cubicle and displayed a mid-temper [sic] tantrum at Plaintiff for being unresponsive" to an email that she had sent to plaintiff.   *Id.* ¶ 17.   Chen maintains that he "remained calm."   *Id.*   After Chen responded to the email he "walked over to [the supervisor's] office explaining that he had missed her incoming email earlier while focused on related work on hand, and took a bow expressing his regret about the delay."   *Id.*

The following day, December 3, 2010, "an office observer" complained about Chen's behavior and he "was charged with threat in speaking to a supervisor."   *Id.* ¶ 18.   On December

7, 2010, Zombro suspended Chen for five days, without pay.   *Id.* ¶ 19.   Zombro's

"Memorandum" to Chen, dated December 7, 2010, states, in relevant part, ECF 1-6 at 3:

> On Friday, December 3, 2010, I gave you the opportunity to explain your side of the incident that occurred on December 2, 2010 between you and your Supervisor, Linda Bartnyska.  The incident began as a conversation  between the two of you regarding your work assignment and it escalated with you yelling at her in your cubical, following her to her office to continue the conversation, where you once again, raised your voice and leaned over her conference table in a manner that was intimidating.  Not only was this behavior unprofessional it was disruptive to many of you [sic] co-workers who were subjected to your out burst [sic]. On December 7, 2010 Mitigation was held.
>
> I gave you the opportunity to give your version of the incident and you admit in your write-up that you in fact did raise your voice. We have met previously regarding your inappropriate behavior in communicating with your supervisor. Inappropriate behavior in the work place is a serious issue and will not be tolerated.
>
> Should behavior such as this continue, you will be subject to progressive discipline that could result in termination.

Chen appears to dispute Zombro's characterization of his conduct on December 2, 2010.

He asserts, ECF 1 ¶ 20: "Given Plaintiff's ethnic traits of his national origin, a bodily bow is

generally used as a way of expressing respect/gratitude or regret."

On December 21, 2010, plaintiff's supervisors rated his performance as "Satisfactory" in

a "Mid-Cycle PEP[4] Evaluation."   *Id.* ¶ 22 (citing ECF 1-7).   However, on June 23, 2011,

plaintiff received an "End-of-Year Appraisal with an unsatisfactory overall rating."  ECF 1 ¶ 24.

The Code of Maryland Regulations ("COMAR"), which governs performance appraisals

for state employees, provides, in relevant part, 17.04.05.03(G)(1):

> When an employee has been given an overall rating of "unsatisfactory" on an annual performance appraisal, the employee's supervisor shall inform the

---

[4] "PEP" is an abbreviation for "Performance Planning & Evaluation Program."  *See* ECF 1-15 at 2-9, "Performance Planning & Evaluation Program (PEP) Guidelines & Instructions."

> employee that the employee has 180 days from issuance of the rating to improve
> to the level of "satisfactory". Approximately midway through the 180-day period,
> the employee and the employee's supervisor shall meet to evaluate the
> employee's progress toward a satisfactory rating. Failure to meet standards at the
> end of the 180-day period shall result in the employee's termination.

*See* ECF 1-18 at 2, Notice of Termination dated Jan. 11, 2012.

On June 30, 2011, Zombro and another supervisor, Norman Ringel, issued a "Performance Improvement Plan" ("PIP") to plaintiff, dated June 23, 2011.  ECF 1-18 at 3, Notice of Termination; *see* ECF 1-9, PIP.  The PIP identified plaintiff's performance in the following areas as "Needs Work (Unsatisfactory)": "Working independently"; "Self checking results"; "Ability to understand and use statistical formulas"; "Ability to accurately/clearly explain analytical results in written text"; "Demonstrates an increasing knowledge of the MCDB,[5] expertise in its use"; "Prepares at least one technical analysis using the MCDB"; "Reports progress, resolves questions needing decision with supervisor"; "Provides data analysis, text development, and document reviews for the health insurance coverage report"; "Prepares at least one technical analysis using the MCDB or other data in accordance with the approved study and design and timeline."  ECF 1-9 at 2.

The PIP also stated, *id.* at 3: "This plan will be reviewed monthly, as necessary, to work with Linda/Leslie on areas of difficulty and to note areas of strength. This plan, and any amendments, will be considered for the mid-cycle PEP, to take place on or before December 31st, 2011. The performance under the plan will be reevaluated in 180 days starting July 1, 2011."  A "Special Note" at the end of the PIP stated, in relevant part, *id.*: "Mr. Chen was rated as satisfactory during his mid-term evaluation; it was due to the implement of a new performance

---

[5] The record does not indicate to what "MCDB" refers.

evaluation system. Instruction from DBM[6] were that all employees were to be rated Satisfactory."

Chen maintains that on or about October 27, 2011, his supervisors "falsely accused" him of "using 'a modem and a data plan' (a personal smart phone) to access the Internet at work . . . ."  ECF 1 ¶ 25.  He asserts that no device was found "in his use or possession" and that he had no data plan subscription.  *Id.*  According to plaintiff, the following day, his supervisors "abruptly removed" his "desktop access to [the] Internet," "without notice."  *Id.* ¶ 26.  Chen acknowledges that he took an "extended lunch break" on October 28, 2011.  ECF 1-11 at 2.

On the morning of November 2, 2011, Chen sent an email to Bartnyska, with a copy to Steffen and to Chen's immediate supervisor, Leslie LaBrecque.[7] ECF 1-13 at 8.  It said, in large-point font, *id.* (bold in original): "**Please restore my intra/internet connections!**"  On November 2, 2011, Chen met with Zombro and an unnamed supervisor.  ECF 1 ¶ 27.  According to Chen, Zombro "asserted that the access removal was made in June 2011 due to the poor overall rating of Plaintiff's PEP Evaluation."  *Id.*  Chen submits that Zombro's explanation was "erroneous" as he (Chen) had had internet access and "used it in completing his work assignments uninterrupted until late October 2011."  *Id.*

On November 4, 2011, a "project supervisor" sent a complaint to Steffen about Chen's conduct.  *Id.* ¶ 28.  Steffen wrote a "Memorandum" to Chen on November 8, 2011, which provided, in pertinent part, ECF 1-10 at 3:

---

[6] I assume that "DBM" refers to the Maryland Department of Budget and Management. *See About the Department of Budget and Management,* Department of Budget and Management (Feb. 3, 2016), http://dbm.maryland.gov/Pages/AboutDBM.aspx.

[7] LaBrecque was identified as Chen's supervisor in "State of Maryland Performance Evaluation For Non-Supervisory Employees," which Chen signed on December 28, 2011, "with [d]isagreements."  ECF 1-14 at 2, 5.

On Wednesday November 2, 2011 Bridget Zombro and Leslie LaBrecque held a meeting with you to discuss your Performance Improvement Plan and AWOL incident that recently occurred.  I was informed that your behavior was inappropriate during the meeting; raising your voice many times, cutting Bridget off, laughing and rolling your eyes. I reviewed your statement of the incident on Friday, November 4, 2011 and Mitigation was held on November 7, 2011[.]

You did admit that you had an emotional conversation in the meeting with Bridget and Leslie. This type of unprofessional behavior in the work place is not appropriate and will not be tolerated.

Inappropriate behavior in the work place is a serious issue and will be handled as such. Should behavior such as this continue, you will be subject to progressive discipline which could result in termination.

According to a "Notice of Disciplinary Action," which Steffen signed on November 9, 2011, MHCC suspended Chen without pay for ten days, from November 9, 2011 until November 22, 2011.  ECF 1-10 at 2.  In the early evening of November 9, 2011, the first day of Chen's suspension, Chen returned to the MHCC office to discuss his suspension with Steffen.  ECF 1 ¶ 32; ECF 1-12 at 2.

By email of November 14, 2011, Chen asked Steffen to reconsider his ten-day suspension.  ECF 1-11 at 2-3.  Chen wrote, in relevant part, *id.* at 2: "I would like to apologize for being emotional in my conversation with Bridget Zombro on November 2, 2011. And I owe an apology to Leslie LaBrecque for my failure to inform her, both in advance and afterward, of the extended lunch break I took on October 28, 2011."  Chen explained that his "behavior— raising my voices [sic], cutting Bridget off, laughing and rolling my eyes—were not inappropriate" in light of the circumstances of his conversation with Zombro and applicable Maryland state guidelines for "'Conduct and Behavioral Issues.'"  *Id.*

On November 16, 2011, Steffen sent an email to Zombro, with a copy to Chen, to "provide[] documentation on [Chen's] appearance at the MHCC on November 9, 2011." ECF 1-12 at 2.[8]  The email said, in relevant part, *id.*:

> Mr. Chen appeared in my office and requested a meeting. The meeting was unexpected and I stated to the Mr. Chen [sic] that he was on a 2-week suspension. I told Mr. Chen that he had to leave. Mr. Chen stated he just needed to provide a few facts. I told him to sit down as he was polite, but quite agitated.
>
> Mr. Chen reviewed the facts of his case with me, Mr. Chen stated that he had talked with the Chief Counsel at DHMH. I asked him at that point to leave as I viewed the reference to the 'General Counsel' as an attempt to intimidate. Mr. Chen continued, he stated that the meeting on November 2nd was not a performance counseling meeting, he had not been informed of the nature of the meeting and therefore it was a discussion behind closed doors with his supervisor. I told him a decision had been made consistent with state personnel policy.
>
> Mr. Chen requested that Mr. David Sharp,[9] be called to mediate, because he had a language problem.[10]  He stated that I said at staff [sic] meeting that David Sharp would mediate personnel issues where language problems were the issue. I have no recollection of ever suggesting this odd protocol. I told him, for the third time that he had to leave and that any further communication during the 2-week suspension period must be in writing or via email. I told in the strongest terms, that he must leave immediately. Mr. Chen left the building.
>
> Mr. Chen['s] behavior disrupted the work at the MHCC on November 9th.  Only after the 3rd request did Mr. Chen leave the building. His unexpected appearance at the building was alarming and violated the condition of his 2-week suspension. After he left, I instructed all employees to depart for the evening. I closed and locked the offices at approximately 6:15 PM after confirming that no one remained inside.

---

[8] As discussed, *infra*, Chen contests Steffen's account of their conversation on November 9, 2011.

[9] The record does not indicate in what capacity Sharp works.

[10] Plaintiff contends that Steffen used the words "'a language problem'" in regard to "Plaintiff's accent and inability to communicate well in English." ECF 1 ¶ 35; *see* ECF 10 at 5-6.

By "Memorandum" from Steffen to Chen dated November 29, 2011, Steffen imposed a fifteen-day suspension on Chen for inappropriate behavior in the workplace, effective November 30, 2011 through December 20, 2011.  ECF 1-13 at 16.  The suspension related to Chen's return to the office on the evening of November 9, 2011.  *Id.*; *see also* ECF 1 ¶¶ 35-37; ECF 1-13 at 15, "Notice of Disciplinary Action."[11]  The Memorandum provides, in relevant part, ECF 1-13 at 16:

> On the morning of Wednesday, November 9, 2011 you received a ten (10) day suspension for inappropriate behavior in the work place. At that time, you were verbally told that you could not return to the building until Monday, November 28, 2011. This was also stated in writing and issued to you with the Discipline on November 9, 2011.
>
> At approximately 6:15 pm on the evening of November 9, 2011, you returned back to the office and used your pass key to gain entry into the building although you were previously instructed not [to] do so. In addition to returning to the office, a complaint was filed for your inappropriate behavior towards another MHCC Supervisor. It was stated that you confronted your previous Supervisor in the parking lot about not returning voicemails that were left earlier in the day. You were informed that the situation was not going to be discussed at that time, and were advised to leave the area.  As a result of feeling uncomfortable, the Supervisor attempted to quickly get to her vehicle. After realizing that you were still quickly following, she felt threatened and returned to the building. Once in the building vestibule, you continued to confront her and you were informed again that you needed to leave. You advised the [S]upervisor that you wanted to talk to her and you would let yourself into the building. While you were attempting to get into the building the Supervisor ran for her vehicle, where she then called an Appointing Authority to notify her of the situation.
>
> Inappropriate behavior in the work place is a serious issue and will be handled as such. Should behavior such as this continue, you will be subject to progressive discipline which could result in termination.

On November 10, 2011, a "project supervisor" saw plaintiff's return to the MHCC office and "filed a complaint against Plaintiff with false allegations that he followed her to her car in

---

[11] By letter of December 12, 2011, to Joshua Sharfstein, M.D., Secretary of MDHMH, an attorney for plaintiff requested that plaintiff's 15-day suspension be lifted because it was "lacking both a legal and factual basis . . . ."  ECF 1-13 at 3; *see also id.* 3-7.

the parking lot." ECF 1 ¶ 33. As a result, he "was charged with threat on the safety of the work place." *Id.*

Chen returned to work on December 21, 2011, and "on arrival" received a "Mid-Cycle PEP Evaluation with an unsatisfactory overall rating." ECF 1 ¶ 40. A "State of Maryland Performance Evaluation for Non-Supervisory Employees," which LaBrecque and Zombro signed on December 21, 2011 (ECF 1-14 at 5), indicates that Chen had an "Unstatisfactory [sic]" "Mid Cycle Rating." *Id.* at 4; *see id.* at 2-5. A portion of the evaluation is titled "Training Recommendations" and it states: "Need better communication skills. Chen does not understand the tasks we are asking of him. Language seems to a [sic] barrier." *Id.* at 5. In the section titled "Supervisor's Comments," the form says, in relevant part, ECF 1-14 at 5:

> Mr. Chen does adequate work when given highly structured and annotated instructions. He has worked well with Madeline on very straightforward data processing tasks that she clearly laws out. However, if given more than 1 assignment or a task is more complex, Mr. Chen creates numerous diversions as to why the work can't be done, most of which I can't understand. When asked to work with others collaboratively he is at times extremely rude. When attempting to provide him constructive guidance in getting his work done, he has a difficult time listening. He attends meetings but ignores everyone and reads papers while in attendance. Chen expends enormous time on the internet . . . .[12]

After receiving the "Mid-Cycle PEP Evaluation," Chen "was ordered to leave for home until further notice." ECF 1 ¶ 40; *see* ECF 1-14 at 5 ("Sent home on administrative leave").

Plaintiff maintains that his supervisors violated the "Performance Planning & Evaluation Program (PEP) Guidelines & Instructions" (ECF 1-15 at 2-9) in preparing his "Mid-Cycle PEP Evaluation." ECF 1 ¶ 41; *see id.* ¶¶ 41-42. In particular, plaintiff contends that his supervisors

---

[12] Chen's submissions apparently provide only a portion of the "State of Maryland Performance Evaluation for Non-Supervisory Employees." The final sentence of the "Supervisor's Comments" is cut off mid-sentence. ECF 1-14 at 5.

evaluated his performance "in *only* three (3) areas" and did not "explain the reasons for any of these ratings." *Id.* ¶ 41 (emphasis in original).  Chen asserts that "the overall rating is fraudulent and that his performance should be rated Satisfactory according to relevant PEP Guidelines." ECF 1 ¶ 43.

By email of December 26, 2011, Chen provided Steffen with a "written response" to his "Mid-Cycle PEP."  ECF 1 ¶ 43; ECF 1-16 at 2-4, email from Chen to Steffen dated Dec. 26, 2011.  Chen pointed to four examples of his job performance that, in his view, "deserve a better than Satisfactory <u>Overall Work Quality</u> rating . . . ." ECF 1-16 at 2 (underline in original).  Chen also wrote, *id.* at 3: "The way by which my mid-cycle evaluation was rated raises questions on the completeness of its entirety and the fairness of any less than satisfactory rating by each performance standard."  The following day, Zombro, on behalf of Steffen, acknowledged receipt of Chen's response and indicated that the performance evaluation, along with Chen's response, would be forwarded to "Personnel."  ECF 1-16 at 4, email from Zombro to Chen dated Dec. 27, 2011.

In an email of January 11, 2011, Zombro asked Chen to come to her office on January 18, 2011, "to meet with me regarding your employment status."  ECF 1-17 at 2; *see* ECF 1 ¶ 44.  According to Chen, when he arrived at the MHCC office on the morning of January 18, 2012, he was given a "Notice of Termination without an effective date of termination."  ECF 1 ¶ 45; *see* ECF 1-18 at 4, Notice of Termination (providing no date after "Date of Notice:").  The Notice of Termination, which Steffen signed on January 11, 2012 (ECF 1-18 at 4), provided, in relevant part, *id.* at 3:

> During the rating period of July 2011 through December 2011, meetings were held to address work performance issues and concerns with Mr. Chen. A

project tracking chart was created to outline issuance date, due date and comments of Mr. Chen's assigned projects. In many instances, missed deadlines and assignments done incorrectly were addressed via email to Mr. Chen. Two disciplinary actions were issued to Mr. Chen during this rating period for inappropriate and unprofessional behavior in the work place.

As a result of work performance issues and multiple occurrences of inappropriate behavior in the work place, Mr. Chen's Mid-Cycle (180 day) rating of his Performance Evaluation was unsatisfactory. A PEP meeting was held on December 21, 2011 to discuss the mid-cycle evaluation. On December 28, 2011 Mr. Chen received the signed copy of his evaluation.

Mr. Chen has received a total of three suspensions for inappropriate and unprofessional behavior in the work place.

On February 8, 2012, Chen appealed his termination to the Department of Budget and Management. ECF 1 ¶ 48. He also filed grievances concerning his termination and his December 2011 PEP evaluation. ECF 1-19 at 2, ALJ Decision of Sept. 4, 2012. These matters were referred to Maryland's Office of Administrative Hearings ("OAH") and ultimately consolidated before an Administrative Law Judge ("ALJ"). *Id.* at 3.[13] The ALJ dismissed Chen's grievances but held a merits hearing on the appeal of Chen's termination. *Id.* at 3-4. In a written decision of September 4, 2012, the ALJ ruled in Chen's favor. ECF 1-19. In particular, the ALJ concluded (*id.* at 15-16) that MDHMH's termination procedure had violated COMAR 17.04.05.03(C)(4), which, in relevant part, requires the State to "inform the employee of the effective date of the disciplinary action." The ALJ ordered recission of Chen's Notice of Termination; that Chen be restored to his position; and that Chen be awarded back pay, retroactive to January 18, 2012. *Id.* at 16.

---

[13] The ALJ issued a sixteen-page opinion (ECF 1-19 at 1-17), which indicated that Chen appealed on or about March 6, 2012. The discrepancy is not material.

MDHMH sought judicial review in the Circuit Court for Baltimore City.  *See* ECF 1-26 at 2-9, Memorandum of June 12, 2013.  It argued that COMAR 17.04.05.03(C) and COMAR 17.04.05.03(G) provided independent grounds for termination and that Chen's termination was proper under COMAR 17.04.05.03(G).  ECF 1-26 at 3.  The circuit court determined that MDHMH had failed to preserve its argument that Chen's termination was proper under COMAR 17.04.05.03(G) and upheld the ALJ's conclusion that MDHMH failed to issue a notice of termination to Chen in compliance with COMAR 17.04.05.03(C).  *Id.*; *see id.* at 2-9.  By order of June 12, 2013, the circuit court affirmed the ALJ.  *See* ECF 1-26 at 10.

According to the Complaint, MDHMH appealed the circuit court's judgment to the Maryland Court of Special Appeals.  ECF 1 ¶ 71.  But, plaintiff provides no information about the outcome of the appeal.  However, in an unpublished opinion issued in July 2014, eleven months before plaintiff filed this suit, the Maryland Court of Special Appeals reversed the circuit court.[14]  *Department of Health and Mental Hygiene, et al. v. Chen* (*Chen I*), No. 909, Sept. Term 2013 (filed July 11, 2014), *cert. denied*, 440 Md. 225 (2014).  The Court of Special Appeals concluded that MDHMH had preserved its argument that COMAR 17.04.05.03(G) provided an independent ground for Chen's termination and that MDHMH terminated Chen in compliance with COMAR 17.04.05.03(G).  *Chen I* at 12-13.

As defendants note in their Reply (ECF 11 at 3), after plaintiff's termination, plaintiff also litigated challenges to his ten-day and fifteen-day suspensions.  *See Chen v. Maryland Dep't of Health & Mental Hygiene* (*Chen II*), 223 Md. App. 770 (2015), *cert. denied*, 445 Md. 5,

---

[14] In a footnote in the Opposition, plaintiff refers to the decision of the Court of Special Appeals.  ECF 10 at 24 n.14.

122 A.3d 975 (2015).[15]   The case was referred to OAH and an ALJ held a hearing on August 28, 2012.  *Id.* at *2.  The ALJ issued a decision on September 25, 2012, affirming both suspensions. *Id.*  On March 13, 2013, Chen filed a petition for judicial review in the Circuit Court for Baltimore City, which affirmed the ALJ's decision on May 13, 2013.  *Id.* at *2.  Thereafter, Chen appealed to the Maryland Court of Special Appeals.  *Id.*  He argued that both suspensions were "procedurally deficient" and that the ALJ's decision to uphold his fifteen-day suspension was "arbitrary and capricious."  *Id.* at *1.  The Court of Special Appeals affirmed, concluding that DHMH followed the appropriate procedures in suspending Chen and that "the ALJ's findings were amply supported by the evidence . . . ."  *Id.*

In addition to litigating his suspensions and his termination, on November 13, 2012, Chen filed a "Charge of Discrimination" with the Maryland Commission on Civil Rights, which was cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC").[16]  ECF 1-24 at 2.  The "Charge of Discrimination" names the "Maryland Health Care Commission" as the sole respondent.  *Id.*  Chen alleged that he suffered discrimination based on national origin when he was terminated on January 18, 2012.  *Id.*  The "continuing action" box is blank.  *Id.*  The "particulars" of the charge are as follows, *id.*:

---

[15] The Opinion is not reported in A.3d.

[16] Chen maintains that on January 28, 2015, "seven-hundreds-fifty-one (751) days after the deadline for filing a response to EEOC's Notice of Charge ([ECF 1-25 at 2-3])," DHMH filed a response to the Charge of Discrimination.  ECF 1 ¶ 72.  Chen's submissions, however, suggest that DHMH had been asked to supplement its response.  By email of December 10, 2014, for example, the EEOC resent its "request for *additional* information . . . ."  ECF 1-32 at 3 (emphasis added).  Nonetheless, it appears that DHMH failed to comply with all of the EEOC's requested response deadlines.  *See, e.g.*, ECF 1-32 at 2, Email from Keneithia J. Taylor (DHMH) to Theresa Beverly (EEOC) dated Jan. 28, 2015 (apologizing for DHMH's failure to supplement its response by the EEOC's requested deadline).

I. I began my employment with the above-mentioned employer on December 9, 2009, in the position of Health Policy Analyst Advanced under Ms. Linda Barthyska [sic], Chief. On January 18, 2012, I was discharged by Mr. Ben Stetter [sic], Acting Executive Director.

II. The reason given for my discharge was due to "inappropriate and unprofessional behavior" and "unsatisfactory work performance."

Ill. I believe I was discriminated against based on my national origin (Chinese) in violation of Title VII of the Civil Rights Act of 1964, as amended, with respect to discharge.

By letter of March 31, 2015, the EEOC notified Chen of the results of its investigation. ECF 1-33 at 2-3.  In relevant part, the letter stated that "during the course of the investigation, documentary evidence revealed similarly situated employees whose national origins were white American have also been discharged for unprofessional behavior and unsatisfactory work performance."  *Id.* at 3.  The EEOC informed Chen, *id.*: "Your charge is being dismissed based on our assessment that there is little likelihood of establishing a violation in the circumstances presented by your charge."

The EEOC issued a "Dismissal and Notice of Rights" to Chen dated March 31, 2015.  *Id.* at 4.  It notified Chen that "the EEOC is unable to conclude that the information obtained establishes violations of the statutes" and that "[y]our lawsuit **must be filed <u>WITHIN 90 DAYS of your receipt of this notice</u>**."  *Id.* (bold, capitalized, and underlined in original).  Chen filed this suit on June 18, 2015.  ECF 1.

## II.   Discussion

### A.  Subject Matter Jurisdiction

#### 1.  Rule 12(b)(1)

As noted, defendants assert that this Court lacks subject matter jurisdiction as to some of plaintiff's claims.   In particular, defendants contend that plaintiff's "failure to exhaust his administrative remedies as to his claim for harassment and against the individual defendants before filing his complaint divests this Court of subject matter jurisdiction and serves as a jurisdictional bar to his claim."   ECF 6-1 at 9.   They argue that, in Chen's EEOC charge, plaintiff "alleged only that he was discriminated against based on his national origin, 'with respect to discharge'" and that he is now foreclosed from bringing an additional claim related to "harassment" in violation of Title VII.   *Id.*

Plaintiff contends that he exhausted his administrative remedies before filing suit (ECF 10 at 2-3), and he has submitted his EEOC Intake Questionnaire.   ECF 10-1.   Plaintiff asserts that he "promptly filed this instant suit" after receiving notice of his right to sue.   ECF 10 at 3 n.1.

Defendants' Motion is premised, in part, on Fed. R. Civ. P. 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction. A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true,'" or that other facts outside the four corners of the complaint preclude the exercise

of subject matter jurisdiction. *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir. 2009) (citation

omitted); *accord Durden v. United States,* 736 F.3d 296, 300 (4th Cir. 2013).

Defendants have brought a factual challenge, because they argue that plaintiff did not

exhaust the appropriate administrative process as to all claims and all defendants. ECF 6–1 at 9-

10, Memo.  According to defendants, facts omitted from the Complaint preclude jurisdiction.

"When . . . a defendant challenges the existence of subject matter jurisdiction in fact, the

plaintiff bears the burden of proving the truth of such facts by a preponderance of the

evidence." *U.S. ex rel. Vuyyuru v. Jadhav,* 555 F.3d 337, 347 (4th Cir. 2009); *see also Warren v.*

*Sessoms & Rogers, P.A.,* 676 F.3d 365, 371 (4th Cir. 2012) (abrogated on other grounds by

*Campbell-Ewald Co. v. Gomez,* ___ U.S. ___, 136 S. Ct. 663, 669 (2016)); *Evans v. B.F. Perkins*

*Co.,* 166 F.3d 642, 647 (4th Cir. 1999). In ruling on a motion under Rule 12(b)(1), the court

should "regard the pleadings as mere evidence on the issue, and may consider evidence outside

the pleadings without converting the proceeding to one for summary judgment." *Evans,* 166 F.3d

at 647 (citation and quotation marks omitted). The court should grant the motion "'only if the

material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a

matter of law.'" *Id.* (quoting *Richmond, Fredericksburg, & Potomac R.R. Co. v. United*

*States,* 945 F.2d 765, 768 (4th Cir. 1991), *cert. denied,* 503 U.S. 984 (1992)).

### 2.  Exhaustion

A potential plaintiff must file a charge with the EEOC before filing suit in a federal court

under Title VII. 42 U.S.C. § 2000e–5(f)(1) (2006) (permitting civil suit by the "person claiming

to be aggrieved" after filing of a charge with the EEOC and upon receipt of a right-to-sue

letter); *see also, e.g., Miles v. Dell, Inc.,* 429 F.3d 480, 491 (4th Cir. 2005); *Puryear v. Cnty. of*

*Roanoke,* 214 F.3d 514, 518 (4th Cir. 2000). This "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles,* 429 F.3d at 491.

The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Institution,* 429 F.3d 505, 510 (4th Cir. 2005). Rather, together with the agency investigation and settlement process it initiates, the requirement "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet,* 221 F.3d 648, 653 (4th Cir. 2000)).[17] "Allowing [the EEOC] first crack at these cases respects Congress's intent . . . ." *Sydnor v. Fairfax Cnty.,* 681 F.3d 591, 593 (4th Cir. 2012).

Title VII's exhaustion requirement also functions as a jurisdictional bar in federal courts where plaintiffs have failed to comply with it. In *Balas,* 711 F.3d at 406, the Court said: "[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." Even when a plaintiff has filed a claim with the EEOC, a court cannot consider matters that were not properly raised during the EEOC process. *See, e.g., Jones,* 551 F.3d at 300 (quoting *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir. 1996)) ("'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable

---

[17] For a description of the EEOC complaint, investigation, and settlement process, *see Balas,* 711 F.3d at 407.

investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'"); *Miles,* 429 F.3d at 491.

To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look *only* to the charge filed with that agency." *Balas,* 711 F.3d at 408 (emphasis added); *see also Evans,* 80 F.3d at 962–63 ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."); *Chacko,* 429 F.3d at 506 ("This charge frames the scope of future litigation."). Although courts "recognize that EEOC charges often are not completed by lawyers and as such must be construed with utmost liberality," courts are "not at liberty to read into administrative charges allegations they do not contain." *Balas,* 711 F.3d at 408 (citations and quotation marks omitted). Rather, courts are constrained by the four corners of the charge and the inference of "'any charges that would naturally have arisen from an investigation thereof . . . .'" *Balas,* 711 F.3d at 407–08 (citations omitted). In *Sydnor,* 681 F.3d at 594, the Fourth Circuit said: "[A]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow. Instead, so long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit." *Accord Jones v. Southpeak Interactive Corp. of Del.,* 777 F.3d 658, 669 (4th Cir. 2015).

In addition, "[u]nder Title VII, a civil action may be brought after administrative proceedings have ended or conciliation attempts have failed only 'against the respondent named in the [administrative] charge.'   42 U.S.C. § 2000e-5(f)(1)." *Alvarado v. Bd. of Trustees of Montgomery Cmty. Coll.*, 848 F.2d 457, 458 (4th Cir. 1988).   The purpose of the naming

requirement is twofold and "not a mere technicality." *Id.* "First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law." *Id.* at 458-59. It is "designed to provide notice to the charged party and to permit the EEOC to attempt voluntary conciliation of complaints." *Id.* at 460. Thus, to bring suit against a defendant in his/her individual capacity, a potential plaintiff must have named the defendant as a respondent in the EEOC charge. *Causey v. Balog*, 162 F.3d 795, 800-01 (4th Cir. 1998) (plaintiff's "EEO charge failed to put the individual defendants on notice that they were potentially subject to personal liability for the alleged violations. We therefore agree with the district court's conclusion that the individual defendants may not be held personally liable for any alleged violations of Title VII . . . .").

### 3.  Analysis

As noted, plaintiff's EEOC "Charge of Discrimination" stated, in relevant part, ECF 1-24 at 2: "I believe I was discriminated against based on my national origin (Chinese) in violation of Title VII of the Civil Rights Act of 1964, as amended, with respect to discharge." It also said, *id.*: "The reason given for my discharge was due to 'inappropriate and unprofessional behavior' and 'unsatisfactory work performance.'" Defendants contend that plaintiff's "Charge of Discrimination" is devoid of any allegations that are reasonably related to a claim for "harassment" (ECF 1 at 1), which I have construed liberally as a claim for hostile work environment under Title VII. *See* ECF 6-1 at 9. I agree with the defense that plaintiff failed to

exhaust the EEOC process as to his hostile work environment claim.  Therefore, this Court lacks

subject matter jurisdiction to entertain it.[18]

Defendants also argue that the "individual defendants are not subject to personal liability

because they were not named as respondents in any of the Plaintiff's EEOC charges."  ECF 6-1

at 10.  It does not appear that plaintiff responded to defendants' arguments concerning the

personal liability of the individual defendants.  Instead, plaintiff appears to contend that the issue

distracts from the central question of the factual sufficiency of his Complaint.  *See* ECF 10 at 4

("The Plaintiff's factual allegations here are both plausible and well-documented and, aside from

the Defendants' attempt to create a factual dispute about whether Van T. Mitchell can be sued in

his official capacity, are essentially admitted by the Defendants.").   Again, I agree with

defendants.

Chen's EEOC "Charge of Discrimination" names the "Maryland Health Care

Commission," an independent commission within MDHMH, as the sole respondent.  ECF 1-24

at 2.  To be sure, the "particulars" of the charge state, in part, *id.*: "I began my employment with

the above-mentioned employer on December 9, 2009, in the position of Health Policy Analyst

---

[18] Chen appended to his Opposition (ECF 10) his EEOC Intake Questionnaire, which provided additional allegations, including a claim that "these disciplllinary [sic] actions against me were so serious & created a very hostile work environment and led to my discharge."  ECF 10-1 at 7.  "'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'"  *Mylan Laboratories, Inc. v. Akzo*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)), *aff'd*, 2 F.3d 56 (4th Cir. 1993); *see also Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

In any event, "[i]n determining what claims a plaintiff properly alleged before the EEOC, [the Court] may look only to the charge filed with that agency."  *Balas*, 711 F.3d at 408.  An EEOC intake questionnaire "cannot be read as part of [a plaintiff's] formal discrimination charge without contravening the purposes of Title VII."  *Id.*

Advanced under Ms. Linda Barthyska [sic], Chief. On January 18, 2012, I was discharged by Mr. Ben Stetter [sic], Acting Executive Director."  Assuming that the reference to "Ben Stetter" was, in fact, a reference to Steffen, Steffen is not named as a respondent in the "Charge of Discrimination" and would not have had notice that he was potentially subject to personal liability.  Nor does the "Charge of Discrimination" contain a reference to Zombro.  *See id.* Accordingly, plaintiff failed to exhaust the EEOC process as to his claims against Steffen and Zombro individually, and this Court lacks subject matter jurisdiction over these claim.

Defendants also contend that claims against Mitchell, Steffen, and Zombro "must be dismissed because supervisors are not liable in their individual capacities for Title VII violations."  ECF 6-1 at 10.  It is unclear whether Mitchell has been sued exclusively in his official capacity or also individually.  The Complaint expressly brings claims against Mitchell "in his official capacity."  ECF 1 at 1; ECF 1 ¶ 6.  But, the Complaint also says: "Plaintiff sues *Defendants* in their individual and official capacity."  *Id.* ¶ 11 (emphasis added).

Defendants correctly assert that the individual defendants are not subject to suit under Title VII in their individual capacities. *See Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998) ("[S]upervisors are not liable in their individual capacities for Title VII violations.").  Accordingly, individual-capacity claims under Title VII as to the individual defendants are subject to dismissal.

### B.     Failure to State a Claim

### 1.     Rule 12(b)(6)

As indicated, defendants have also moved to dismiss under Fed. R. Civ. P. 12(b)(6). Plaintiff counters, ECF 10 at 3: "The allegations in the Complaint more than suffice to state a

claim against the Defendants."   In this regard, plaintiff reiterates many of the allegations contained in the Complaint (*see, e.g., id.* at 4-15) and compares his treatment to that of "similarly rated employees."   *Id.* at 15; *see id.* at 15-17.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."   The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, (2007).

To survive a motion under Fed. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).  But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). Therefore, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient. *Twombly*, 550 U.S. at 555. Moreover, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). Put another way, in reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, ____ U.S. ____, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville,* 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, ____ U.S. ____, 132 S. Ct. 1960 (2012).

A motion asserting failure to state a claim typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards*, 178 F.3d at 243 (quotation marks omitted); *see Houck*, 791 F. 3d at 484; *Tobey v. James*, 706 F.3d 379, 387 (4th Cir. 2013). But, "if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint,'" or in other material that is the proper subject of consideration under Rule 12(b)(6), such a defense can be resolved on the basis of the facts alleged in the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*); *see Houck*, 791 F.3d at 484.

Ordinarily, in resolving a motion under Rule 12(b)(6), a court "is not to consider matters outside the pleadings . . . ." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007); *see Clatterbuck,* 708 F.3d at 557. Under certain limited exceptions, however, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb*, 791 F.3d at 508.

Of relevance here, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).  To be "integral," a document must be one "that by its 'very existence, *and not the mere information it*

*contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). On this basis, I have considered the many exhibits that plaintiff appended to his Complaint.

## 2.    Title VII

Title VII prohibits an employer from discriminating against "any individual with respect to his compensation terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e—2(a)(1). *See Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014). "Title VII does not remedy everything that makes an employee unhappy." *Jeffers v. Thompson,* 264 F. Supp. 2d 314, 329 (D. Md. 2003).

The statute makes clear that the intentional discrimination must be on the basis of plaintiff's "race, color, religion, sex, or national origin." *See* 42 U.S.C. §§ 2000–e2(a)(1). And, in order to prevail under Title VII, "the existence of some adverse employment action is required." *James v. Booz–Allen & Hamilton, Inc.,* 368 F.3d 371, 375 (4th Cir. 2004). An "adverse employment action" is one that "'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC,* 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998)). Single acts that may not be cognizable as adverse actions on their own may, over time, cumulatively amount to an unlawful employment practice where they create a hostile work environment. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115 (2002); *see also Harris*, 510 U.S. at 21; *Hoyle,* 650 F.3d at 333–34.

In general, there are "two avenues" *at trial* by which a plaintiff may prove intentional employment discrimination. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc) (recognized in *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) as abrogated on other grounds by *Univ. of Texas Sw. Med. Ctr. v. Nassar*, ____ U.S. ____, 133 S. Ct. 2517 (2013)).   The plaintiff's first avenue is to offer "'direct or indirect'" evidence of discrimination under "'ordinary principles of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997). The plaintiff's second avenue is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See*, *e.g.*, *Young v. United Parcel Serv., Inc.*, ____ U.S. ____, 135 S. Ct. 1338, 1345 (2015) (construing the Pregnancy Discrimination Act).

The *McDonnell Douglas* scheme is "a procedural device, designed only to establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted). Under the *McDonnell Douglas* approach, the "ultimate burden of persuasion [at trial] never 'shifts' from the plaintiff" to prove intentional unlawful discrimination. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 n.2 (4th Cir. 1989) (citation omitted). Notably, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

If the plaintiff chooses to proceed at trial under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 719 (4th Cir. 2013). Although the precise formulation of the required prima facie showing

will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff is generally required to show that the employer took adverse action against an applicant "under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Under the *McDonnell Douglas* approach, if a plaintiff establishes a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle*, 650 F.3d at 336; *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).   In *McDonnell Douglas,* the prima facie case of racial discrimination in hiring was formulated as follows, 411 U.S. at 802:

> (i) that [the plaintiff] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

If the defendant submits no evidence of any legitimate basis for its actions, the fact finder may "infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978).   But, "[i]f the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11.

If the defendant meets its burden of production, the plaintiff must then prove, by a preponderance of evidence, "that the proffered reason was not the true reason for the employment decision," and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516-20; *Adams v. Trustees of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (emphasis in original)).  On the other hand, if the defendant fails to meet the burden of producing "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis in original). This is because a legal presumption of intentional discrimination has been established. *Id.* at 510 n.3; *see Burdine*, 450 U.S. at 255 n.8 ("[T]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.").

As noted, these two approaches establish the common methods by which a plaintiff may prove intentional employment discrimination *at trial*. *See Burns*, 96 F.3d at 731. At the summary judgment or motion to dismiss stage, however, these approaches merely serve to inform a court's evaluation of the allegations. *See Pettis v. Nottoway Cnty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014) (stating that a plaintiff asserting racial discrimination "may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas*. . . .").

To survive a motion to dismiss, an employment discrimination complaint need not include specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas*. *See Swierkiewicz v. Sorema*, *N.A.*, 534 U.S. 506, 508 (2002). This is because "[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement." *Id.* at 510. As the Supreme Court explained in *Swierkiewicz, id.* at 512, requiring a plaintiff to plead a prima facie case would impose a "heightened pleading standard" that conflicts with Fed. R. Civ. P. 8(a)(2). Rather, "to survive a motion to dismiss, the complaint must 'state a plausible claim for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, ____ U.S.____, 132 S.Ct. 1327 (2012) (citation omitted).

Thus, in the posture of this case, the prima facie case standard under *McDonnell Douglas* is not applicable. Indeed, the Fourth Circuit has admonished district courts to "'resist the temptation to become so entwined in the intricacies of the [*McDonnell Douglas*] proof scheme that they forget that the scheme exists solely to facilitate determination of the ultimate question of discrimination *vel non*.'" *Merritt*, 601 F.3d at 295 (quoting *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991)) (alterations in *Merritt*; internal quotation marks omitted). The Fourth Circuit has observed that, "[n]otwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of 'the ultimate question of discrimination *vel non*.'" *Merritt,* 601 F.3d at 294-95 (citation omitted).[19]   Thus, "[b]y the time of appeal

---

[19] On several occasions where the employer proffered evidence in its motion for summary judgment of a legitimate reason for its adverse action, the Fourth Circuit has assumed, without deciding, that the plaintiff established a prima facie case. *See*, *e.g.*, *Holland v.*

especially, the issue boils down to whether the plaintiff has presented a triable question of intentional discrimination . . . ." *Id.* at 295.

As noted, Chen alleges that he was wrongfully terminated, in violation of Title VII. *See* ECF 1 at ¶¶ 75-82. To state a claim for discrimination under Title VII, a plaintiff must allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190; *accord Gerner v. Cnty. of Chesterfield, Va.*, 674 F.3d 264, 266 (4th Cir. 2012).

Chen is a member of a protected class, because he was born in China. He also alleges that he had satisfactory job performance. *See* ECF 1 ¶¶ 14-16. And, Chen's termination was clearly an adverse employment action. Accordingly, plaintiff adequately alleges the first three elements for discrimination under Title VII.

Defendants argue that plaintiff "fails to provide any factual support for his conclusory allegations that he was intentionally discriminated against based on his national origin." ECF 6-1 at 6. In particular, defendants contend, *id.* at 7: "The Plaintiff merely offers a few conclusory statements – none of which make a reference to other people similarly situated, of differing national origin, being treated more favorably than he." Further, defendants submit that plaintiff "fails to plead allegations that other employees were subjected to less severe discipline for

---

*Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007), *cert. denied*, 552 U.S. 1102 (2008); *Hux v. City of Newport News*, 451 F.3d 311, 314 (4th Cir. 2006); *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc); *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 319-20 (4th Cir. 2005); *cert. denied*, 546 U.S. 1091 (2006); *Rowe v. Marley Co.*, 233 F.3d 825, 829 (4th Cir. 2000); *see also Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 736-37 (D. Md. 2009); *Spriggs v. Pub. Serv. Comm'n*, 197 F. Supp. 2d 388, 394 (D. Md. 2002).

violation of the same infractions or that employees with the same unsatisfactory performance evaluations received less severe discipline." *Id.* I agree.

Construing the Complaint liberally, as I must, *Erickson*, 551 U.S. at 94, I can identify no factual allegation that Chen was treated differently than similarly situated employees outside of his protected class. To be sure, Chen alleges that he was "treated less favorably for being subjected to excessive disciplinary suspensions without pay and discharge on a fraudulent rating on work performance. These disparate treatments are discrimination on national origin and harassment by Defendants in conspiracy to discharge on pretext." ECF 1 ¶ 79. Yet, as the Fourth Circuit explained in *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015), "'naked' allegations—a 'formulaic recitation' of the necessary elements—'are no more than conclusions' and therefore do not suffice." (Quoting *Twombly*, 550 U.S. at 555). The Complaint does not allege, for example, that similarly situated MHCC employees outside of Chen's protected class were not disciplined or terminated for comparable work performance. And, the Complaint does not allege that similarly situated MHCC employees engaged in conduct that MHCC's supervisors considered increasingly insubordinate and threatening, yet did not suffer similar adverse employment actions. "Only speculation can fill the gaps" in the Complaint. *McCleary-Evans*, 780 F.3d at 586. Accordingly, the Complaint fails to state a claim for wrongful termination under Title VII.[20]

---

[20] In his Opposition (ECF 10), Chen submits, *id.* at 15: "According to the State's Annual Personnel Report for Fiscal Year 2012, there were a total of 36 employees similarly situated rated unsatisfactory. Mr. Chen and the other 35 are indistinguishable but for their national origin.[1] The Defendants' execution of the PEP evaluation process separated Mr. Chen from the others and then imposed disciplinary discharge on Mr. Chen only." As noted, *supra*, a complaint may not be amended by the briefs in opposition to a motion to dismiss. Accordingly, I cannot consider the facts alleged in Chen's Opposition (ECF 10).

### C.  Due Process Claims

Plaintiff also brings claims pursuant to the Fourteenth Amendment and its State constitutional counterpart, Article 24 of the Maryland Declaration of Rights.[21]  *See, e.g.*, *Littleton v. Swonger*, 502 Fed. Appx. 271, 274 (4th Cir. 2012) ("Articles 24 and 26 are construed in *pari materia* with the Fourth and Fourteenth Amendments of the U.S. Constitution"); *McDaniel v. Arnold*, 898 F. Supp. 2d 809, 847–48 (D. Md. 2012); *Dent v. Montgomery Cnty. Police Dep't*, 745 F. Supp. 2d 648, 661 (D. Md. 2010) (Articles 24 and 26 "are construed in *pari materia* with the Fourteenth and Fourth Amendments of the United States Constitution, respectively").

The precise basis for plaintiff's due process claims is unclear.  With regard to plaintiff's claim under the Fourteenth Amendment, the Complaint alleges, ECF 1 ¶ 84: "Plaintiff was afforded no advance notice that his actions as described herein could result in disciplinary actions, nor adequately notified of his discharge before it went in effect."  Thus, it appears that plaintiff challenges, on due process grounds, the procedure by which his supervisors disciplined and ultimately terminated him.[22]

---

[21] Article 24 of the Maryland Declaration of Rights provides: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

[22] Defendants maintain, ECF 6-1 at 12: "Court II . . . of Plaintiff's Complaint alleges an equal protection violation under the 14th Amendment to the United States Constitution." Plaintiff's Opposition submits, ECF 10 at 7: "The Defendants selectively discharged the Plaintiff on the basis of his national origin (Chinese) in violation of the Equal Protection clause of the United States Constitution and Title VII of the Civil Rights Act of 1964."  Notwithstanding defendants' Motion (ECF 6-1) and plaintiff's Opposition (ECF 10), there is no indication in the Complaint (ECF 1) that plaintiff brings claims under the Equal Protection Clause of the Fourteenth Amendment.  Indeed, the Complaint explicitly references the "Due Process Clause of the Fourteenth Amendment."  *Id.* ¶ 84.

Defendants did not specifically raise the issue of res judicata in their Motion.  *See* ECF 6. But, in their Reply, they assert, ECF 11 at 3:

> [Plaintiff's] Complaint and Response appear to attempt to re-litigate the merits of his suspensions and termination.  The Plaintiff unsuccessfully challenged both his discipline and his termination in state court. In two separate decisions, the Court of Special Appeals of Maryland affirmed the Department's discipline of the Plaintiff and the decision to terminate him.

In its discretion, a district court may consider the issue of res judicata, sua sponte. *Clodfelter v. Republic of Sudan*, 720 F.3d 199, 208 (4th Cir. 2013) ("We . . . review the district court's sua sponte decision to consider whether res judicata bars a plaintiff's claims for abuse of discretion.);  *accord Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008) (Posner, J.) ("Nor was it improper for the district judge to invoke res judicata even though the defendants had failed to argue it.").  To be sure, the Fourth Circuit has cautioned that, "as a general matter, a district court should not sua sponte consider an affirmative defense that the defendant has the burden of raising.  Res judicata is such a defense."  *Clodfelter*, 720 F.3d at 208-09 (citation omitted); *see Arizona v. California*, 530 U.S. 392, 412 (2000) ("Judicial initiative of this sort might be appropriate in special circumstances.").  But, the Fourth Circuit has also recognized that res judicata can "implicate important judicial and public concerns not present in the circumstances of ordinary civil litigation."  *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006). And, in *Arizona*, 530 U.S. at 412, the Supreme Court explained that "'the policies underlying res judicata'" include not only "'the defendant's interest in avoiding the burdens of twice defending a suit, but . . . also . . . the avoidance of unnecessary judicial waste.'" (Quoting *United States v. Sioux Nation*, 448 U.S. 371, 432 (1980) (Rehnquist, J., dissenting)(citations omitted)).

Notably, in *Clodfelter*, 720 F.3d at 208, the Fourth Circuit said that "the extent and nature of the previous proceedings will inform a district court's decision to raise a preclusion defense on its own initiative . . . ."  Here, in light of plaintiff's extensive State court litigation against DHMH pertaining to his suspensions and termination, it is appropriate for the Court to exercise its discretion and consider, *sua sponte* the issue of res judicata.

Res judicata, or claim preclusion, is a judicial doctrine by which "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States,* 440 U.S. 147, 153 (1979); *see Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008).  The doctrine precludes parties from "contesting matters that they have had a full and fair opportunity to litigate," thereby conserving judicial resources and minimizing the possibility of inconsistent decisions.  *Montana*, 440 U.S. at 153–54.

The doctrine of res judicata was "designed to protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.'"  *Laurel Sand & Gravel*, 519 F.3d at 161-62 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)); *see also Gertz v. Anne Arundel Cnty.*, 339 Md. 261, 269, 661 A.2d 1157, *cert. denied*, 516 U.S. 990 (1995); *deLeon v. Slear*, 328 Md. 569, 580, 616 A.2d 380, 385 (1992); *Alvey v. Alvey*, 225 Md. 386, 390, 171 A.2d 92, 94 (1961). Res judicata also extends to claims that could have been asserted and litigated in the original suit. *FWB Bank v. Richman*, 354 Md. 472, 493, 731 A.2d 916, 927 (1999).

The applicable law for purposes of claim preclusion in federal court is the law of the tribunal in which the prior judgment was entered.  *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *accord Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S.

280, 293 (2005). The Fourth Circuit has said: "Generally, the preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered." *Laurel Sand & Gravel, Inc.*, 519 F.3d at 162; *accord Jones v. HSBC Bank USA, N.A.*, 444 F. App'x 640, 643 (4th Cir. 2011) (per curiam).

The doctrine applies when the following three elements are present: "(1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and later suit, and (3) an identity of parties or their privies in the two suits." *Clodfelter*, 720 F.3d at 210 (citation and quotation marks omitted); *see also Young–Henderson v. Spartanberg Area Mental Health Ctr.,* 945 F.2d 770, 773 (4th Cir. 1991) (quoting *Nash Cty. Bd. of Educ. v. Biltmore Co.,* 640 F.2d 484, 486 (4th Cir. 1981)); *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996) ("claim preclusion occurs when three conditions are satisfied: 1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and, 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding"); *Weiner v. Fort*, 197 F. App'x 261, 264 (4th Cir. 2006) (quoting *In re Varat Enterprises, Inc.*, 81 F.3d at 1315).

Under Maryland law, application of *res judicata* requires satisfaction of the same three factors:

> (1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation.

*Cochran v. Griffith Energy Servs., Inc.*, 426 Md. 134, 140, 43 A.3d 999, 1002 (2012); *accord Powell v. Breslin*, 430 Md. 52, 63-64, 59 A.3d 531, 538 (2013);  *deLeon*, 328 Md. at 580, 616 A.2d 380.

All of these elements are satisfied here.  First, as noted, Chen has litigated two suits in State court pertaining to his suspensions and termination.  *See Chen I*; *Chen II*.  In both suits, the Maryland Court of Appeals denied certiorari.  *See id.*  Accordingly, Chen's state court litigation satisfies the first element.

Second, a cause of action is "identical" for purposes of res judicata if it "involves a right arising out of the same transaction or series of connected transactions that gave rise to the claims in the first action."  *Harnett v. Billman,* 800 F.2d 1308, 1314 (4th Cir. 1986); *see Clodfelter*, 720 F.3d at 210 ("we follow the 'transactional' approach when considering whether causes of action are identical: 'As long as the second suit 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment,' the first suit will have preclusive effect.'" (citation omitted)); *In re Varat Enterprises, Inc.*, 81 F.3d at 1316.  Moreover, "[i]t has long been established that judgment between the same parties or their privies upon the same cause of action is conclusive 'not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit.'" *Richman*, 354 Md. at 493, 731 A.2d at 927 (citations omitted).

As discussed, Chen's suspensions and ultimate termination—precisely the same "series of transactions" alleged here—were the subject of his Maryland court litigation.  *See id.* Notably, the relief the Chen requests from this suit, "rescission of his discharge and restoration to his position of employment with full back pay and to have his suspensions expunged from his

record" (ECF 1 at 2), is identical to the relief that the ALJ ordered on September 4, 2012 (ECF 1-19 at 2)—relief that the Maryland Court of Special Appeals ultimately ruled was inappropriate.

To be sure, Chen now couches his procedural objections to his discipline and termination as due process violations. Yet, "[a] plaintiff's invocation of a different legal theory in the subsequent action" does not preclude application of res judicata. *Onawola v. Johns Hopkins Univ.*, Civ. No. AMD 07–870, 2007 WL 5428683, at *1 (D. Md. Sept. 24, 2007) (citing *Harnett*, 800 F.2d at 1314); *see* Restatement (Second) of Judgments § 24(2) cmt. c (1982).

In *Bilbrough*, 309 Md. at 495, 525 A.2d at 236, the Maryland Court of Appeals said: "[I]t seems to be settled here that a mere change in the legal theory, applied to the same set of facts previously litigated, will not in and of itself avoid claim preclusion." The court also observed, *id.* at 497, 525 A.2d at 237: "'The present trend is to see [a] claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories'. . . ." (Citation omitted).

What the Maryland Court of Appeals said in *Richman*, 354 Md. at 493, 731 A.2d at 927, is also pertinent (emphasis in *Richman*):

> When an earlier court has actually ruled on the matter sought to be litigated in a second court, the "same claim" analysis is usually straightforward. It is when . . . the earlier court has *not* directly ruled upon the matter that the analysis becomes more complex, for then the second court must determine whether the matter currently before it was fairly included within the claim or action that was before the earlier court and *could* have been resolved in that court.

Accordingly, to the extent that Chen relies on a theory of relief that differs from his prior cases, this does not bar application of res judicata in this case.

Finally, the defendants in this case are in privity with the defendants in the previous cases. Parties are in privity for purposes of res judicata where they are "so identified in

interest . . . that [they] represent the same legal right in respect to the subject matter involved." *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005). Moreover, "[p]rivity exists where a plaintiff attempts to relitigate the same claim by naming different governmental entities and employees as defendants." *Kayzakian v. Buck*, 865 F.2d 1258, at *2 (4th Cir. 1988) (per curiam) (citing *Mears v. Town of Oxford, Md.*, 762 F.2d 368, 371 n. 3 (4th Cir. 1985)). Two of the defendants here, DHMH and MHCC, were parties in Chen's State cases. The individual defendants, Mitchell, Steffen, and Zombro, are administrators who work for DHMH and MHCC. Consequently, the privity requirement is readily met.

Accordingly, I conclude that Chen's due process claims challenging the procedure by which he was disciplined and terminated, under both the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights, are barred by the doctrine of res judicata. Therefore, I need not consider defendants' other arguments in favor of dismissal of the due process claims. ECF 6-1 at 11-14.

I reach a different conclusion as to the Title VII claim. My reasons follow.

As noted, *Chen I* involved an appeal from an ALJ's determination that DHMH's termination procedure had violated COMAR 17.04.05.03(C)(4). *Chen II* involved an appeal from an ALJ's determination that DHMH had complied with relevant State procedures when it issued Chen a ten-day and a fifteen-day suspension. The Maryland Court of Special Appeals has explained, *Roane v. Maryland Bd. of Physicians*, 213 Md. App. 619, 630, 75 A.3d 344, 351 (2013), *cert. denied*, 436 Md. 329 (2013):

> The scope of judicial review of agency decisions is defined by the Administrative Procedure Act, Md. Code (1984, 2009 Repl. Vol.), § 10–201 *et seq.* of the State Government Article ('SG').[] Within that framework, our review is well defined and, for the most part, quite limited: we look through the circuit

court's review to the agency decision itself and determine whether there is substantial evidence in the record as a whole to support the agency's findings and conclusions.

Given the limitations of judicial review under Maryland's Administrative Procedure Act, Md. Code (2014 Repl. Vol., 2015 Supp.), § 10–201 *et seq.* of the State Government Article, plaintiff had no opportunity in those proceedings to bring a claim for employment discrimination under Title VII.   *See*, *e.g.*, *Richman v. FWB Bank*, 122 Md. App. 110, 147, 712 A.2d 41, 59 (1998) ("In our view, a critical element of *res judicata* was not satisfied here; appellants' fraud claims were never litigated in the prior bankruptcy action, nor, with propriety, could they have been. Therefore, we hold that appellants' fraud claims are not barred in State court by *res judicata*."), *aff'd*, 354 Md. 472, 731 A.2d 916 (1999).   Accordingly, plaintiff's Title VII claims are not barred by res judicata.

### III. Conclusion

In sum, plaintiff failed to exhaust the appropriate administrative remedies as to his claims under Title VII for a hostile work environment and as to the individual defendants in their individual capacities.   Accordingly, the Court lacks subject matter jurisdiction as to those claims. Plaintiff's due process claims concerning his discipline and termination under both the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights are barred by the doctrine of res judicata.   And, Chen's Complaint fails to state a claim for discrimination under Title VII under Fed. R. Civ. P. 12(b)(6), for the reasons stated.   However, I will grant plaintiff leave to file an amended complaint for discrimination under Title VII as to DHMH, MHCC, and the individual defendants in their official capacities.

A separate Order follows, consistent with this Memorandum.


Date: February 17, 2016                    _____/s/_____
                                           Ellen Lipton Hollander
                                           United States District Judge